H.C. HENINGER and Doris W. Heninger, Plaintiffs and Respondents,

v.

NINTH CIRCUIT COURT, STATE OF UTAH, WASHINGTON COUNTY, St. George Department, and Robert F. Owens, Circuit Judge, Defendants and Appellants.

No. 20976.

Supreme Court of Utah.

July 9, 1987.

David L. Wilkinson and Diane Wilkins, Salt Lake City, for defendants and appellants.

Gary Pendleton and Paul Graf, St. George, for plaintiffs and respondents.

HOWE, Justice:

This is an appeal of a summary judgment granted by the Fifth District Court on a petition for an extraordinary writ. In granting the writ, the district court reversed the Ninth Circuit Court's forfeiture of four bail bonds and enjoined the circuit court's revocation of respondents' bonding authority.

Respondents H. C. and Doris Heninger were authorized bondsmen for the Ninth Circuit Court. They filed undertakings of bail with that court in four separate drunk driving cases. Each of the defendants pleaded guilty and were sentenced to sixty days in the county jail and to pay a fine and a surcharge. In each case, fifty-eight days of the sentence were suspended and the defendant was put on probation. Three of the four defendants surrendered themselves to the Washington County Jail to serve the remaining two days. The fourth failed to appear for execution of the sentence. Not one of the four defendants paid the fine.

Bond forfeiture hearings were held, and all four bonds were forfeited. The circuit court ruled that the bonds continued in force during probation until all terms of the sentences had been satisfied. Respondents sought review of the forfeiture order in Fifth District Court by extraordinary writ. They also sought a declaration of the duration of a bondsman's liability. The day after respondents' petition was filed, the circuit judge sent a letter to the Washington County sheriff instructing him to no longer accept bonds from respondents. Respondents amended their petition to seek a writ of prohibition barring enforcement of the revocation of their bonding authority.

On motion for summary judgment, the district court held that an order revoking respondents' bonding authority was prohibited unless and until they were provided notice of the basis for the revocation and were given a full hearing on their qualifications to act as bondsmen in the circuit court. The court further decreed by way of declaratory judgment that the obligation of a bondsman is fulfilled by the production of the defendant at all times required by the court, up to and including the *imposition* of sentence, at which time the bond is exonerated by operation of law. Based on this reasoning, respondents were released from liability on the four bonds.

The first issue is whether the district court erred in granting extraordinary relief. Appellants maintain that the proper avenue for relief would have been by direct appeal of the forfeiture ruling to the district court, and since respondents did not lodge such an appeal, they should have been precluded from seeking extraordinary relief. This argument must fail. Under our case law, a bond forfeiture order is reviewable on appeal from a final judgment, but standing alone, the order is not appealable. *People v. Tremayne*, 3 Utah 331, 3 P. 85 (1884). Where no appeal of the conviction was sought and no direct appeal of the forfeiture order was thus available, the district court did not err in allowing respondents to proceed by petition for an extraordinary writ.

Appellants also claim that the district court improperly exercised supervisory power over the circuit court by issuing the writ. Both article VIII of the Utah Constitution (the judicial article) and title 78 of the Utah Code (the judicial code) have undergone substantial revisions since this action was filed. Among the many amendments that have been made, the language specifically granting the district court supervisory control over inferior courts was eliminated from article VIII and title 78. Appellants argue that the elimination of that language prevents the district court from granting the extraordinary relief sought in this case. We do not agree. Under the law at the time this action was

commenced, the district court clearly had power to issue extraordinary writs. Nothing in the amendments to the judicial article of the constitution or the judicial code stripped the court of that power. The power of the district court to issue "all extraordinary writs" is found in the language of the constitution and statutes both prior and subsequent to the recent amendments. The elimination of the "supervisory control" language was made in preparation of the shifting of direct appeals of circuit court judgments from the district court to the court of appeals. However, eliminating the supervisory control of the district court over circuit courts does not curtail the exercise of powers granted the district court, by constitutional provision (article VIII, section 5) and statute (Utah Code Ann. § 78-3-4 (1987)), to issue "all extraordinary writs."

■ Appellants next contend that the district court misread Utah Code Ann. § 77-20-7(1) (1982), which defines the duration of liability on an undertaking of bail. It provides:

> The principal and the *sureties* on the written undertaking *are liable* thereon during all proceedings and *for all appearances* required of the defendant up to and *including* the *surrender* of the defendant *in execution of* any *sentence* imposed irrespective of any contrary provision in the undertaking.

(Emphasis added.)

The district court in the declaratory judgment portion of its order held that "the obligation of the bondsman is fulfilled by the producing of the person ... up to and including the time of sentence and that the bail bond is exonerated upon the *imposition* of the Court's sentence." (Emphasis added.) This interpretation of the above statute is in error. The statute extends liability for all appearances "up to and including surrender of the defendant in *execution of any sentence imposed.*" This phrase clearly indicates an intent to extend liability *beyond* the imposition of sentence. It contemplates the defendant's appearing and surrendering himself to serve his sentence.

■ Appellants urge that *all* the terms of the sentence, including payments of any fine imposed, and any other terms of probation must be fulfilled before the bond is exonerated. We disagree. *City of Atlanta v. Turner*, 8 Ga.App. 213, 68 S.E. 847 (1910), is illustrative of the problem in the instant case. There the defendant was sentenced to one week on the chain gang and to pay a fine. He served the sentence but failed to pay the fine. In affirming the lower court's refusal to order forfeiture of the bond, the Georgia Court held that "the prisoner having personally appeared and surrendered himself into custody for punishment in accordance with the sentence, the bondsman was discharged from further liability. The other obligor, the prisoner, remains liable for the fine."

If a defendant is sentenced to incarceration and ordered to surrender himself at a particular time and place to a court-designated authority, the bond remains in force to assure "surrender in execution of sentence." However, the bondsman is liable only for "all *appearances* required of the defendant." He is not liable for payment of the defendant's fine, nor is he liable for the defendant's fidelity to the terms of his probation. While the bondsman is given power to arrest the defendant in order to insure his appearance, he is not given powers that would allow him to enforce payment of a fine or coerce particular behavior required by the terms of probation. Where no further appearance is required of the defendant, the bondsman has fulfilled his contractual and statutory obligation and is entitled to exoneration of the bond.

In the instant case, when defendants Samuel Benally, Jonathan Marshall, and Dennis Ashcroft appeared and served their two-day sentences, the bondsmen were entitled to exoneration of the bonds since those defendants appeared "in execution of sentence." Conversely, when Jeffrey Greening failed to appear as required by the court, his bond was properly forfeited.

■ Lastly, appellants correctly observe that circuit courts have the inherent power and right to authorize and regulate under-

takings of bail in their courts. In the exercise of that power, appellants argue, notice of and hearing on the revocation of respondents' bonding authority was not required. We disagree. The inherent power of the court to authorize and regulate bondsmen should be exercised in a fair and open manner, avoiding any appearance of arbitrariness. This can only be accomplished by notice to affected persons, giving them an opportunity to be heard, and a reasoned explanation of the court's decision. Any procedure short of this could adversely reflect upon the judiciary and its processes.

We hold that the circuit court abused its discretion in not providing notice and hearing prior to termination of respondents' bonding authority. We consequently affirm that part of the summary judgment barring termination of respondents' bonding authority without notice and hearing. We reverse that part dealing with bondsman's liability. The order exonerating the bonds is also reversed and remanded with directions to exonerate only the bonds of Benally, Marshall, and Ashcroft, who appeared to serve their jail sentences.

HALL, C.J., STEWART, Associate C.J., and DURHAM and ZIMMERMAN, JJ., concur.